IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

UNITED STATES OF AMERICA    )
    )
v.    )
    )  Criminal Action No. 3:21cr14–HEH
KWAMANE TEASHAWN HENDRICK, )
    )
    Defendant.    )

**MEMORANDUM OPINION**
**(Denying Motion to Dismiss as Sanction for *Brady* Violation)**

This matter is before the Court on Kwamane Teashawn Hendrick's ("Defendant")

Motion to Dismiss Count 2 as Sanction for *Brady* Violation ("Motion to Dismiss," ECF

No. 58), filed on June 24, 2021. Defendant claims that the Government has failed to

disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and

its progeny. Under the Due Process Clause, the prosecution is required to disclose

evidence that is favorable, such as exculpatory or impeachment evidence. *Giglio v.*

*United States*, 405 U.S. 150, 154–55 (1972); *Brady*, 373 U.S. at 87.[1] The Government

maintains that, regardless of whether this evidence was exculpatory, it was disclosed

before trial and Defendant was not prejudiced by its late disclosure. The parties have

submitted memoranda in support of their respective positions, and the Court heard

evidence and argument on June 30, 2021. For the reasons that follow, the Court will

deny the Motion.

---

[1] A discovery order was entered pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), reminding the Government of its prosecutorial obligations. (ECF No. 11.) Therefore, the Government had ample notice of the requirement to disclose exculpatory and impeachment evidence.

The principal facts of this case are well-known to the Court.  Defendant was arrested on August 2, 2019, and was indicted for possession with intent to distribute cocaine.  (Mem. Op. Denying Mot. Suppress 1, ECF No. 41.)  Officers from the Richmond City Police Department ("RPD") arrested Defendant after the culmination of a two-month investigation into drug distribution at 2113 Keswick Avenue.  (*Id.* at 8–9.)  One of the underpinnings of the probable cause supporting Defendant's arrest was a transaction that occurred between Defendant and an individual in a gray pick-up truck in front of 2113 Keswick Avenue on August 2, 2019.  (*Id.* at 9–10.)  Defendant walked up to the vehicle and had a brief conversation with a passenger, at which time a hand-to-hand transaction was believed to have occurred.  (*Id.* at 9.)  RPD officers then followed the vehicle and conducted a traffic stop.  (*Id.*)  One of the individuals in the pick-up was found to have a white substance—which was later determined to be cocaine—in a lottery ticket in his sock.  (*Id.*)  Because this vehicle had last stopped at 2113 Keswick Avenue, the RPD officers believed that this individual obtained the cocaine from Defendant.  (*Id.* at 12–13.)

In his Motion to Dismiss, Defendant contends that new evidence has been uncovered that calls into question the Government's version of events.  At the June 30, 2021 hearing, Defendant called Kenneth Barner ("Mr. Barner") to testify.  Mr. Barner was a passenger in the pick-up stopped by RPD on August 2, 2019, driven by his friend and coworker Reginald Freeman ("Mr. Freeman").  (Pretial Mot. Hr'g Tr. 12:11–14; 13:16–18; 17:17–24, ECF No. 83.)  Mr. Barner and Mr. Freeman briefly stopped at the house to say hello to Defendant, and Mr. Freeman had a brief conversation with

Defendant. (*Id.* 17:17–24; 19:14–20:11.)  The pick-up truck was later stopped, and, as a

result of the traffic stop, Mr. Barner was found to have cocaine in his sock and was

arrested. (*Id.* 13:19–24.)  He stated that he was taken to the First Precinct located on 25th

Street and was questioned by officers. (*Id.* 14:4–5.)  According to Mr. Barner, an officer

asked him if he had obtained the cocaine from Mr. Hendrick, to which Mr. Barner

responded that he did not. (*Id.* 14:12–18.)  Mr. Barner thereafter declined to disclose

where he obtained the cocaine. (*Id.* 14:19–25.)

In response, the Government produced two witnesses.  The first, RPD Officer

Khalid Harris ("Officer Harris"), was the officer that arrested Mr. Barner. (*Id.* 36:4–6.)

Officer Harris indicated that he was informed by other officers that an individual in a

gray truck participated in a hand-to-hand transaction with Defendant, so he performed a

traffic stop on the vehicle. (*Id.* 36:7–13.)  The front seat passenger, Mr. Barner, was the

focus of the stop. (*Id.* 36:14–16.)  Officer Harris searched all the vehicle's occupants,

and, he discovered some U.S. currency and a folded-up lottery ticket containing what the

officer believed to be a controlled substance in Mr. Barner's sock. (*Id.* 36:24–37:12.)

After arresting him and placing him in a patrol vehicle, Officer Harris asked Mr. Barner

if he wanted to help himself out. (*Id.* 39:24–40:4; 49:15–50:19.)  Officer Harris denies

asking Mr. Barner specifically about Defendant as it is not his practice to do so. (*Id.*

44:6–14.)  Other than a logistical conversation to complete paperwork, Officer Harris did

not speak with Mr. Barner further and indicated that Mr. Barner made no statements

regarding where he obtained the drugs. (*Id.* 57:22–53:10.)

The Government's second witness was Officer Chris Williams ("Sergeant Williams"), a night shift sergeant at the First Precinct. (*Id* 53:23–54:2.) On August 2, 2019, Sergeant Williams was called to the scene of the previously mentioned traffic stop to transport Mr. Barner to the Justice Center. (*Id.* 54:17–55:14.) Sergeant Williams did not hear any conversation between Officer Harris and Mr. Barner. (*Id.* 59:13–60:7.) Sergeant Williams did not speak with or interview Mr. Barner. (*Id.* 57:11–21.) In fact, Sergeant Williams testified that he could not have conducted an interview or spoken with Mr. Barner as it is difficult to hear through the plexiglass and metal barriers in the police vehicle. (*Id.* 56:10–11.)

Defendant contends that the foregoing testimony is exculpatory because Mr. Barner is "the only witness who could put drugs in [Defendant's] hands." (Mot. Dismiss 2–3.) The Government argues that it has already disclosed this information via the incident report, wherein Officer Harris—consistent with his testimony—asserts that Mr. Barner made no statements to him or any other officer. (Gov't Opp'n 2, ECF No. 65.) Furthermore, it is obvious that Mr. Barner, who the defense called as a witness, was equally available to both the prosecution and defense.

Generally, *Brady* applies in three different situations, of which "[e]ach involves the discovery, *after trial* of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added). First is "the prosecutor's knowing use of perjured testimony or, equivalently, the prosecutor's knowing failure to disclose that testimony used to convict the defendant was false." *United States v. Bagley*, 473 U.S. 667, 678 (1985). The second situation is

"where the defendant does not make a *Brady* request and the prosecutor fails to disclose certain evidence favorable to the accused." *Id.* at 680. The third and final situation occurs "where the defense makes a specific request and the prosecutor fails to disclose responsive evidence." *Id.* at 681. The prosecution, therefore, has a broad duty to disclose exculpatory evidence, such that "the term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

To establish a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281–82. "*Brady* requires that the government disclose only evidence that is not available to the defense from other sources, either directly or through diligent investigation . . . . Nondisclosure, therefore, does not denote that no exculpatory evidence exists, but that the government possesses no exculpatory evidence that would be unavailable to a reasonably diligent defendant." *Barnes v. Thompson*, 58 F.3d 971, 976 n.4 (4th Cir. 1995) (citations omitted). "Undisclosed evidence is material when its cumulative effect is such that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Sterling*, 724 F.3d 482, 511 (4th Cir. 2013) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). "A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.*

5

Despite Defendant's contention that Mr. Barner's testimony is material and exculpatory and that the Government breached its *Brady* obligations by failing to disclose the statements, the testimony does not rise to the level of a *Brady* violation. Mr. Barner testified that he was specifically asked about obtaining cocaine from Defendant. Even if this response rose to the level of exculpatory, it is debatable at this stage whether this information is material.[2] First, this case has not yet gone to trial and this Court is unable to determine the entire scope of both the Government's and Defendant's evidence and what weight Mr. Barner's testimony may carry in the final analysis. However, the circumstances of Mr. Barner's arrest was only one of several factors that implicated Defendant.

Officers observed numerous hand-to-hand transactions—one of which was captured on video camera—and, at the time of his arrest, Defendant had in his possession a large quantity of folded-up lottery tickets and $896 in U.S. currency. (Mot. Suppress Hr'g Tr. 109:17–23; 172:9–173:2, ECF No. 29.) This is in addition to the cocaine and other paraphernalia discovered after Defendant's arrest. (*Id.* 110:20–113:6.) There is no way to forecast what weight Mr. Barner's testimony would be given by the jury. Even so, the police report indicated that Officer Harris asked Mr. Barner if he wanted to provide the police with any information and Mr. Barner refused to do so. It is not unreasonable for the prosecution to anticipate that defense counsel would interview Mr.

---

[2] Mr. Barner informed the Court that he used crack cocaine the morning of the hearing (Pretrial Mot. Hr'g Tr. 32:23–33:2), raising some doubt as to the reliability of his testimony. Moreover, his testimony directly conflicts with the officer's testimony. For example, Mr. Barner stated he was taken to the First Precinct while the officers testified that he was taken to the Justice Center. (*Compare id.* 14:4–5 *with id.* 54:17–55:14.)

Barner, since he was alleged to have obtained cocaine from Defendant. *See Barnes*, 58 F.3d at 976 n.4. The failure to disclose this information is not a *Brady* violation.

Regardless of whether this information is material or exculpatory, conspicuously absent from the parties' briefing is any authority warranting *Brady* sanctions when the evidence at issue was made known to the defense prior to trial. To establish prejudice, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280. Notably, *Brady* claims generally arise *after* trial. *Agers*, 427 U.S. at 103. In this case, the information was discovered *before* trial, and Defendant will have ample opportunity to use it at trial. *See United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985) ("No due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." (citing *United States v. Higgs*, 713 F.2d 39 (3d Cir. 1983))). Moreover, even if there was prejudice, the Fourth Circuit has emphasized that a motion to dismiss an indictment is an extreme remedy that is only available if the court cannot craft an alternate solution. *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) (stating that a motion for an extension of time rather than a motion to dismiss the indictment is the appropriate remedy for late *Brady* disclosure). Here, the Court granted Defendant's Motion to Continue Trial based on Mr. Barner's unavailability on the initial trial date. Thus, even if there was a hyper-technical *Brady* violation, there was no prejudice to Defendant. Moreover, Defendant has received the appropriate remedy—additional time to prepare for trial. *See Smith Grading & Paving*, 760 F.2d at 532.

In sum, the Court finds that there has not been a *Brady* violation and that, even if there was, it has been cured via the trial continuance. Accordingly, for all the aforementioned reasons, the Motion to Dismiss will be denied.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Henry E. Hudson
Senior United States District Judge

Date: July 23, 2021
Richmond, Virginia

8